IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Edward Allen, ) | |
|     Plaintiff, ) | |
| ) | No. 19 CR 7289 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| Sterling Capital Partners, L.P., et al., ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Sterling's [47] and Kaplan's [40] motions to dismiss are granted with prejudice.

## STATEMENT

**Background**

Plaintiff (also referred to as "Relator") originally filed this *qui tam* suit on behalf of himself and the United States, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*.[1] According to the complaint's allegations, Defendants violated the FCA "by engaging in a scheme to submit, or cause to be submitted, false claims for student loans from the federal student aid programs administered by the U.S. Department of Education." (Compl., Dkt. #1, ¶ 4.) Generally, Defendants are: several for-profit law schools (Arizona Summit Law School, LLC; Florida Coastal School of Law, LLC; and Charlotte School of Law, LLC, collectively, "the law schools"); the owners of the for-profit law schools ("InfiLaw"[2]); the Sterling entities, a private equity manager and its funds, which invested in the law schools ("Sterling"); BarBri, Inc.[3] ("BarBri"); and Kaplan, Inc. ("Kaplan"). Plaintiff is a former student at Arizona Summit Law School, where he matriculated in 2016.

---

[1] The complaint was filed on November 5, 2019. (Dkt. # 1.) On December 9, 2020, after the United States elected not to intervene, the Chief Judge of the Northern District of Illinois, who was presiding over the case until that time, unsealed the complaint and transferred the case to this Court. (Dkt. ## 14, 15.)

[2] While the Court uses the spelling InfiLaw, with a capital "L," some court filings and news articles use a lower-case "l".

[3] BarBri has executed a waiver of summons and its responsive pleading is due August 3, 2021. According to Plaintiff's most recent status report, BarBri has repeatedly asked Plaintiff when he intends to file an amended complaint given that Plaintiff has stated that he intends to do so. Plaintiff will not commit to a date. Accordingly, BarBri, believing Plaintiff's complaint to be precluded by the public-disclosure bar and unwarranted by existing law, "has alerted Plaintiff's counsel of its intentions to pursue sanctions under Rule 11 . . . ." (Dkt. # 57, ¶ 6.)

The Court will not set forth in detail all of the allegations in Plaintiff's lengthy complaint but recounts certain relevant allegations for background. Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070 *et seq.* ("Title IV"), provides post-secondary educational institutions access to federal funding through student grants or loans. (Compl., Dkt. # 1, ¶ 74.) Educational institutions apply for funds by entering into a program participation agreement ("PPA") with the United States Department of Education. (*Id.* ¶ 76.) In their PPAs, educational institutions certify their compliance with certain regulations and requirements. (*Id.* ¶ 77.) For example, under the so-called "90/10 Rule," for-profit institutions must derive at least ten percent of their revenue in a given fiscal year from sources other than Title IV funds. (*Id.* ¶¶ 89-90.) Regulations also require educational institutions to maintain accreditation with the appropriate agency, here the American Bar Association ("ABA"). (*Id.* ¶¶ 98-99.)

According to Plaintiff, the law schools, under the direction and control of InfiLaw and Sterling, submitted or caused to be submitted false claims for Title IV funding and made materially false statements regarding the federal student-aid funds that were disbursed to, or on behalf of, students at the law schools. Further, the law schools, with the assistance of the other Defendants, violated the FCA by creating programs and schemes that were designed to manipulate and falsify the information that they are required to report to the ABA, the Department of Education, and prospective and enrolled students. The purportedly false information submitted by the law schools relates to 90/10 Rule data, bar-passage rates, and graduate-employment data. (*Id.* ¶¶ 117-119.) Plaintiff alleges that the law schools expressly and impliedly certified that they had complied with the conditions set forth in their PPAs, the federal regulations governing the Title IV program, and the accreditation standards promulgated by the ABA, knowing the certifications were false. (*Id.* ¶ 121.) Plaintiff also alleges that InfiLaw improperly misled students by not disclosing the details of an investigation by the ABA into Charlotte Law School's failure to meet ABA accreditation standards.[4] (*Id.* ¶¶ 200-239.)

Plaintiff brings four counts against all Defendants: presentment of claims in violation of the FCA (31 U.S.C. § 3729(a)(1)(A)); violation of the FCA (31 U.S.C. § 3729(a)(1)(B)); conspiracy to commit a violation of the FCA (31 U.S.C. § 3729(a)(1)(C)); and retention of overpayment in violation of the FCA (31 U.S.C. § 3729(a)(1)(G)).

**Analysis**

The FCA permits "both the Attorney General and private *qui tam* relators to recover from persons who make false or fraudulent claims for payment to the United States." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 (2010). To establish civil liability under the FCA, a plaintiff generally must show that "(1) the defendant made a statement in order to receive money from the government; (2) the statement was false; (3) the defendant knew the statement was false; and (4) the false statement was material to the government's decision to pay or approve the false claim." *United States ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 561 (7th Cir. 2015) (citation omitted).

---

[4] Plaintiff was a student at Arizona Summit Law School, not Charlotte Law School.

Sterling

Sterling moves to dismiss the complaint on several grounds; however, because the first basis is determinative, it is the only one addressed here. Sterling argues that Plaintiff's complaint should be dismissed pursuant to the FCA's public-disclosure bar, which requires courts to dismiss *qui tam* suits "alleging substantially the same allegations or transactions" as those that were "publicly disclosed" in previous civil suits in which the government or its agent is a party, congressional or other federal reports or investigations, and the news media. 31 U.S.C. § 3730(e)(4)(A)(i-iii). *See also United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 368 (7th Cir. 2016) (the public-disclosure bar is "aimed at barring 'me too' private litigation [that] would divert funds from the Treasury to bounty seekers whose efforts had duplicated those of the government or an earlier bounty seeker").[5] As the Seventh Circuit has stated:

> To determine if an action is barred under § 3730(e)(4) [the public-disclosure bar], we engage in a three-step analysis. We first examine whether the allegations in the complaint have been "publicly disclosed" through one of the enumerated channels. If so, we then determine whether the relator's lawsuit is "based upon," *i.e.,* "substantially similar to," those publicly disclosed allegations. If it is, the public-disclosure bar precludes the action unless "the relator is an 'original source' of the information upon which [the] lawsuit is based." The relator bears the burden of proof at each step of the analysis.

*Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 274 (7th Cir. 2016) (internal citations omitted).

Sterling attaches several sources that allege the same information included in Plaintiff's complaint, including a redlined version of the complaint in the instant action compared with two previously filed complaints in *United States ex rel. O'Connor v. Arizona Summit Law School*, No. 3:15-cv-1351 (M.D. Fla. Nov. 12, 2015) (the "*O'Connor* complaint").[6] Sterling's redlined document demonstrates that Plaintiff's allegations regarding the admission of unqualified students and the 90/10 Rule is copied and pasted from the *O'Connor* complaint. (Defs.' Ex.

---

[5] Both Sterling and Kaplan move to dismiss under both Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). With respect to the public-disclosure bar, Congress amended the section in 2010 to "remove[] the phrase '[n]o court shall have jurisdiction over an action under this section' and replace[] it with '[t]he court shall dismiss an action or claim under this section' . . . ." *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 717 (7th Cir. 2017). Based on this change, "it is unclear whether the language of the 2010 amendment is jurisdictional." *Id.* Whether or not the bar is considered jurisdictional, the FCA expressly states that the Court "shall dismiss" an action that satisfies the elements of the bar.

[6] On a motion to dismiss, the Court may take judicial notice of publicly filed documents. *Arora v. Diversified Consultants, Inc.*, No. 20 C 4113, 2021 WL 2399978, at *2 (N.D. Ill. June 11, 2021) ("The Court can take judicial notice of public records, including public records filed in other lawsuits, without converting a motion to dismiss into one for summary judgment.").

11.A, Dkt. # 49-11.) Also, in *United States ex rel. Lorona v. Infilaw*, No. 3:15-cv-959 (M.D. Fla.), which was filed on August 5, 2015, students at Arizona Summit Law School alleged that the law schools: (1) submitted and recertified false PPAs; (2) violated the 90/10 Rule; (3) made substantial misrepresentations; and (4) circumvented the ABA's accreditation requirements by admitting underqualified students. (*Id*., 3d Am. Compl., Dkt. # 36, ¶¶ 36-43, 61-75, 127-204.) *Lorona* was unsealed on April 24, 2018. (*Id*., Dkt. 33.) In addition, in *United States ex rel. Bernier v. Infilaw,* No. 6:16-cv-970 (M.D. Fla.), which was filed on June 6, 2016, a professor at Charlotte Law School alleged that InfiLaw and Charlotte Law School: (1) admitted academically underqualified students; (2) inflated its graduate employment statistics; (3) improperly certified its underperforming students' academic progress to maintain access to federal funds; (4) failed to satisfy the ABA's accreditation standards; (5) miscalculated its 90/10 Rule data and (6) falsely certified its compliance with these requirements in a PPA. (*Id*., Am. Compl., Dkt. # 48, ¶¶ 58-85; 89-99.) *Bernier* was unsealed on August 15, 2017. (*Id*., Dkt. # 16.) Further, Plaintiff's allegations regarding Charlotte Law School's ABA-accreditation issues come from a report the Department of Education authored after its investigation of Charlotte Law School. (Defs.' Mem. Supp. Mot. Dismiss, Berg Decl., Dkt. # 49, Ex. 1.)

Plaintiff does not dispute that the allegations in his complaint mimic those found in other public sources.[7] Thus, the Court finds that all of Plaintiff's allegations have been publicly disclosed through one of the enumerated channels and that they are based upon or are substantially similar to the publicly disclosed allegations. As to the last element, whether Plaintiff is an original source of the information upon which the lawsuit is based, Plaintiff makes no effort to satisfy his burden in this regard. He simply states that he has a personal and individual injury, but fails to indicate how this assertion is relevant to his burden of demonstrating that he is an original source.[8] In response to Sterling's convincing argument that his claims are barred, Plaintiff fails to cite Seventh Circuit case law and refers only to a Tenth

---

[7] Indeed, as Sterling notes:

> [Plaintiff] concedes that the allegations in his Complaint are based on information that has long been publicly disclosed. According to [Plaintiff], a news article published five years before he filed this suit "aptly describes" his allegations, and a year before he filed this suit, a group of United States Senators sent a public letter to the Secretary of the Department of Education "ask[ing] her to address the precise matters raised in [Plaintiff's] complaint." [Plaintiff] also admits that the information in his Complaint has been "repeated in more than one lawsuit," and that his is one of "many cases brought against" the Sterling Entities . . . .

(Defs.' Reply, Dkt. # 59, at 1 (citations omitted).)

[8] To be an original source, Plaintiff must establish that he (i) voluntarily disclosed the underlying information to the Government prior to the public disclosure, or (ii) has "knowledge that is independent of and materially adds to the publicly disclosed allegations" and "voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B)(ii); *see also United States ex rel. John v. Hastert*, 82 F. Supp. 3d 750, 765 (N.D. Ill. 2015). Plaintiff makes no reference to these requirements and makes no attempt to satisfy them.

Circuit case, which acknowledges that it takes a different approach from the Seventh Circuit regarding the "materially adds" standard for an original source. (Pl.'s Resp., Dkt. # 53, at 17-18 (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 757 (10th Cir. 2019) ("We recognize that the Seventh Circuit has taken a different path" on this issue.)).) But this Court's "function is to apply the existing precedent of the Seventh Circuit Court of Appeals." *Green v. Meeks*, No. 20-CV-463-NJR, 2020 WL 5292045, at *3 (S.D. Ill. Sept. 4, 2020) (emphasis omitted). Regardless, Plaintiff fails to demonstrate that the Tenth Circuit's approach would alter this Court's conclusion as to the applicability of the public-disclosure bar.

Plaintiff's wholesale failure to discuss either the relevant facts or law in responding to Sterling's arguments on the public-disclosure bar means that he has waived any argument in response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). In any event, for the reasons stated, Plaintiff's claims fail on the merits based on the public-disclosure bar.

Plaintiff asks for leave to amend with no explanation of what the amendment would include. Under Rule 15(a)(1)(B), "a party may amend its pleading only with the opposing party's written consent or the court's leave . . . ." Sterling objects to an amendment. While Rule 15(a)(1)(B) states that the "court should freely give leave when justice so requires," the Seventh Circuit has noted that "a district court may deny leave to amend when the plaintiff does not submit a proposed amended complaint, at least where the substance of the proposed amendment is not clear" because "[a] court need not decide in the abstract whether a proposed amendment would be sufficient or futile." *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 506 (7th Cir. 2014) (citations omitted). Given Plaintiff's failure to address the relevant analysis required under the public-disclosure bar or provide any good-faith basis on which he could amend his complaint, the motion for leave to amend is denied. Finally, Plaintiff's unsupported request for discovery is denied.

For these reasons, Sterling's motion to dismiss is granted.

<u>Kaplan</u>

Plaintiff alleges that Kaplan provides preparation courses for individuals taking state bar examinations. Because the law schools struggled with low bar-examination passage rates, Plaintiff claims that in 2011 or 2012, the law schools approached Barbri and Kaplan about creating a bar-examination preparation course that would be offered internally to their students during their time at law school. (*Id*. ¶ 150.) In or around 2012, Kaplan allegedly entered into contracts with the law schools to develop bar-examination preparation programs and materials. (*Id*. ¶ 152.) Plaintiff alleges that these courses were designed to "inflate and falsify the [law schools'] non-Title IV revenue to avoid having the schools become automatically ineligible for Title IV funding." (*Id*. ¶¶ 158-161.) Specifically, the law schools purportedly required students to make payments to them instead of Barbri or Kaplan, and improperly counted this income as non-Title IV income in their 90/10 calculations for 2012 through the present. (*Id*. ¶ 164.) According to Plaintiff, InfiLaw, the law schools, Barbri and Kaplan "conspired to manipulate and falsify the law schools' 90/10 Rule data by entering into an illegal price fixing and anti-competitive arrangement that limited students' ability to choose between multiple competing live

bar preparation programs, as well as eliminating discounts and other incentives that would typically be offered to students by Barbri and Kaplan." (*Id*. ¶ 170.)

Kaplan moves to dismiss for several reasons, but again, the Court can dispose of Plaintiff's claims under the public-disclosure bar, so the Court need not reach the other bases for dismissal. Kaplan did its own redlined version of Plaintiff's complaint with the one filed in the *O'Connor* case, and notes that Plaintiff "copied the *O'Connor* complaint verbatim with only minor typographical changes and a total of seven lines deleted." (Def.'s Mem. Law. Supp. Mot. Dismiss, Dkt. # 41, at 6.) In addition, "nearly all of the allegations of [Plaintiff's] Complaint appear verbatim or nearly verbatim in *Lorona*." (*Id*. at 7.) Notably, Plaintiff makes no effort to respond to Kaplan's arguments and instead files a one-page response seeking leave to amend his complaint, stating that "[d]ismissal of the Plaintiff's Complaint would be unjust in view of Rule 15(a) and *additional relevant information* obtained during the investigation of the case by Plaintiff and counsel." (Pl.'s Resp., Dkt. # 54, at 2) (emphasis added). Plaintiff, however, does not identify the content of the purported additional information. As already noted, "a district court may deny leave to amend when the plaintiff does not submit a proposed amended complaint, at least where the substance of the proposed amendment is not clear" because "[a] court need not decide in the abstract whether a proposed amendment would be sufficient or futile." *Parker,* 772 F.3d at 506 (citations omitted). Here, Plaintiff has been fully notified of the bases for the application of the public-disclosure bar yet fails to provide any ground on which he believes an amended complaint would cure the deficiencies identified in this order. Accordingly, the motion for leave to amend is denied.

For the reasons stated above, Kaplan's motion to dismiss is granted.

**Date**: July 21, 2021

**Ronald A. Guzmán**
**United States District Judge**

6